NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GINA GIOVENE,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 18-17229 (SDW)<br><br>**OPINION**<br><br>December 4, 2019 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Gina Giovene's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Dennis O'Leary's ("ALJ") denial of Plaintiff's claim for Social Security Disability Insurance benefits. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL AND FACTUAL HISTORY**

    **A.  Procedural History**

Plaintiff filed a claim for Title II Social Security disability insurance benefits in August 2015, alleging an inability to complete substantial gainful activity due to multiple impairments

1

starting on September 22, 2013. (Administrative Record [hereinafter, "R."] 12, 163, 182-83.) The claim was denied initially on October 8, 2015, and on reconsideration on January 30, 2015. (R. 12.) Plaintiff requested a hearing on February 17, 2016, and testified before the ALJ on October 12, 2017. (*Id.*) The claim was denied on December 13, 2017, and the ALJ's decision become final, subject to judicial review, when the Appeals Council denied Plaintiff's request for review on October 15, 2018. (R. 1, 10.) Plaintiff brought this civil action on December 14, 2018, asking this Court to reverse the Commissioner's decision and declare that Plaintiff is entitled to benefits, or, in the alternative, to vacate and remand the Commissioner's decision for a new hearing before the ALJ. (Compl. at 4.)

### B. Factual History

Plaintiff is 45 years old and suffers from degenerative disc disease, fibromyalgia, lupus erythematosus, obesity, anxiety, and non-severe diabetes. (R. 15; *see* R. 163.) Plaintiff claims that her disability began on September 22, 2013, the same day she was laid off from her job as a payroll processor. (R. 183.) Following the layoff, Plaintiff completed cosmetology school in June 2015 and obtained a state license in cosmetology. (R. 35, 183.) She thereafter entered training at a barbershop but testified that she could not complete the training due to leg pain. (R. 36-37.)

#### i. Relevant Medical Evidence

According to Plaintiff's medical records, she had normal back and musculoskeletal exams in December 2013. (R. 471.) In May 2014, while enrolled in cosmetology school, Plaintiff presented to the ER complaining of radiating back and leg pain. (R. 549.) Her strength and gait were normal, but she had paraspinal tenderness. (R. 550.) On February 11, 2015, Plaintiff was admitted to Bergen Regional Medical Center for psychiatric symptoms, including depression,

2

anxiety, and obsessive-compulsive symptoms. (R. 419.) Plaintiff's February 2015 mental health treatment records indicate that Plaintiff's gait and station were normal at the time. (R. 420.)

In March 2015, Plaintiff went to Premier Orthopedics and Sports Medicine ("POSM") with complaints of pain in her right hip, left hip, and lower back. (R. 302.) On physical examination, Plaintiff was adequately groomed with a normal range of motion; she had tenderness in her lumbar spine but 5/5 strength in her upper and lower extremities; she had decreased sensation over her left foot and an antalgic gait, but a full range of motion in her hips with some pain at the extremes. (R. 303.) X-rays revealed mild disc space narrowing with sclerosis of the subchondral bone and early degenerative arthritis of the hips. (R. 303.) Plaintiff was referred for physical therapy and encouraged to lose weight. (R. 304.) Records from a May 2015 return visit to POSM indicate that Plaintiff had a mild range of motion limitation due to discomfort and a positive ANA screen for lupus. (R. 308.)

On June 11, 2015, Plaintiff began treatment with rheumatological specialist Dr. Anil Kapoor, who administered nerve blocks. (R. 383-85.) Dr. Kapoor reported that Plaintiff was limited to lifting about two pounds occasionally, standing/walking less than two hours a day, and sitting less than six hours a day. (R. 374.) Four days later, Plaintiff informed her practitioner at POSM that Dr. Kapoor had diagnosed her with mild lupus. (R. 311.) Records from that POSM visit indicate that Plaintiff continued to have a mild range of motion limitation due to discomfort and was instructed to lose 5-10 pounds by the next visit. (R. 312.)

Plaintiff returned to Dr. Kapoor multiple times between August and November 2015, during which time Dr. Kapoor noted that Plaintiff had very tender, swollen, and painful joints, fibromyalgia tender points, with tingling and numbness in her hands, and a very weak right hand. (R. 378-82.) He also noted a hand grip poor enough to prevent using keys or opening jars. (R.

382.) Altogether, however, Dr. Kapoor noted that Plaintiff's physical exam was "essentially unremarkable." (R. 381.)

State agency physician Dr. Mary Ann Nicastro, M.D., reviewed Plaintiff's records on October 6, 2015, and opined that Plaintiff could perform a reduced range of light work. (R. 75.) According to Dr. Nicastro, Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and generally engage in frequent postural activities. (R. 75-76.)

Plaintiff presented to Peter J. Pimpinelli, P.A., twice in November 2015 to follow up for her diabetes. (R. 357.) Records from this time period reveal that Plaintiff's physical exams were "benign" and that she denied all symptoms including musculoskeletal pain. (R. 354-66.) P.A. Pimpinelli opined that Plaintiff had work-related limitations as a result of her impairments, but he declined to provide a medical opinion as to Plaintiff's functional limitations with regard to performing work activities. (R. 355.)

On November 24, 2015, Plaintiff completed a Function Report where she stated that she followed instructions okay but did not handle stress well. (R. 225-26.) The following week, in December, Dr. Kapoor completed a check-box form opining that Plaintiff could only lift/carry up to two pounds, stand less than two hours in an eight-hour workday, and sit less than six hours per day. (R. 374.) Later that month, Plaintiff presented to Dr. Alexander Vitievsky, M.D., for a nephrology consult. (R. 401.) Upon exam, Plaintiff did not report any musculoskeletal issues, her upper and lower extremities revealed no loss of strength or motion, she had no sensory deficit or instability, her range of motion was full, and her extremity exam was unremarkable. (R. 402.)

State agency physician Dr. Leonard Corness, M.D. reviewed Plaintiff's record on January 26, 2016, and opined that Plaintiff could perform a reduced range of light work, including lifting

4

and/or carrying up to twenty pounds occasionally and ten pounds frequently, standing and/or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. (R. 86-88)

In a May 2016 visit to POSM for joint and back pain, Plaintiff stated that she had not had time to go to physical therapy over the past year and had been mostly sedentary. (R. 995.) On July 8, 2016, Plaintiff told her POSM practitioner that she completed physical therapy without improvement and reported continued pain. (R. 999-1000.) Plaintiff had multiple examinations at POSM between July and September 2016, generally indicating 5/5 strength and negative straight leg testing, slightly decreased range of motion, and slightly decreased sensation in her left leg. (R. 1003, 1005, 1007-08.)

Plaintiff was admitted to Hackensack University Medical Center in September 2016 for symptoms of lower back pain. (R. 675.) Radiological reports showed a disc herniation. (R. 693.) Plaintiff's mobility improved with a cane and walker, and she was discharged in stable condition with prescriptions. (*Id.*)

In December 2016, Plaintiff received an epidural steroid injection at POSM; however, she continued to report pain in January 2017. (R. 1004-05.) In April 2017, Plaintiff underwent bilateral L4-L5 facet injections, and in May 2017, she reported that the injections improved her walking, though she still alleged pain. (R. 1022-23.) She exhibited 5/5 strength, appropriate range of motion, normal gait and station with unassisted ambulation, intact reflexes, tenderness at the midline, paraspinal tenderness, and positive straight leg testing. (R. 1024.)

On August 30, 2017, Plaintiff presented to Dr. Nilay Shah, M.D., reporting pain around her ankles and wrists, weakness in her extremities, and spasms. (R. 1035.) The record of Plaintiff's physical exam indicates that she appeared comfortable and in no acute distress; she was

5

awake, alert, and oriented in all spheres; she had full strength in her arms and legs with some giveaway from pain; her gait was normal and her reflexes were 3+ and symmetric bilaterally, though she had mild tremulousness in both hands. (*Id.*) On follow up visits in September 2017, EMG/NCV testing revealed evidence of radiculopathies. (R. 1038.) However, an MRI of Plaintiff's brain revealed no abnormalities and an EEG monitoring study was also normal. (R. 1041, 1044.) When Plaintiff returned on October 11, 2017, Dr. Shah recommended just vitamins, dieting, weight loss, aquatherapy, and follow-up testing. (R. 1033.) In contrast, on September 7, 2017, Dr. Kapoor reported that Plaintiff still had rheumatoid arthritis, that her disability is permanent, and that no improvement is expected. (R. 1034.)

### ii. The Administrative Hearing

Plaintiff, represented by counsel, testified before the ALJ at a hearing on October 12, 2017. (R. 34-60.) She testified that she has burning pain in her legs that limits her ability to stand for more than a half hour, causes her to lose her balance, and causes her to experience vertigo. (R. 38.) She described the pain as resulting from a herniated disc, for which she has received various treatments, none of which alleviated her pain. (R. 53-54.) At times, she uses a rolling walker or a cane to help with her balance. (R. 55-56.) Plaintiff also testified that she experiences pain throughout her entire body due to fibromyalgia. (R. 39.) She testified that current symptoms of her diagnosed lupus include facial rash, thinning hair, and bone pain. (R. 48-51.)

Plaintiff testified that her hands sometimes twitch and shake with tremors. (R. 56.) In a work environment, the hand tremors cause her to hit the wrong keys when she tries to type and hinders her ability to write with a pen. (*Id.*) She estimated that she can use her hands for at most 20 minutes in an eight-hour workday. (R. 57.)

6

Plaintiff also testified about the effects of her mental health diagnoses, including anxiety, depression, borderline personality disorder, and obsessive-compulsive disorder, on her ability to work. (R. 42-48.) She testified that she experiences anxiety and panic attacks triggered by stress and prefers not to associate with people when she is in a depressed state. (R. 42-43.) She picks at her skin obsessively until she bleeds. (R. 48.) Plaintiff stated that she cannot think straight when she is in pain and suffers from memory and concentration impairment, estimating her normal attention span to be about twenty minutes. (R. 44, 49, 58.)

After Plaintiff testified, Defendant's vocational expert classified Plaintiff's past relevant work as specific vocational preparation ("SVP") 4. The ALJ asked the expert to identify a job that Plaintiff could perform with the following limitations in her residual function capacity ("RFC"): sedentary jobs that are of a simple and repetitive nature, that do not require working at heights or around heavy machinery, and that require only occasional but not frequent fine fingering and manipulation bilaterally. (R. 60-61.) The expert then testified that although an individual with these limitations could not perform Plaintiff's past semi-skilled work, she could perform the job of call-out operator, Dictionary Occupation Title ("DOT") # 237.367-014, sedentary, SVP 2. (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the

record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

9

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

On December 13, 2017, the ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. § 404.1520 and issued his decision. (R. 9-30.) The ALJ found that: (1) Plaintiff's earnings during the relevant period did not amount to the regulatory requirements of

11

substantial gainful activity (R. 14); (2) Plaintiff had severe impairments of degenerative disc disease, fibromyalgia, lupus, obesity, and anxiety, and a non-severe impairment of diabetes (R. 15); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (R. 15-17); (4) Plaintiff could not perform her past relevant work (R. 23); and (5) Plaintiff could perform the representative job of call-out operator (R. 24). Thus, the ALJ found Plaintiff not disabled under the Social Security Act. (*Id.*)

In making this determination, the ALJ considered the entire record and found that Plaintiff had the RFC to perform a reduced range of sedentary work "except limited to jobs that are of a simple and repetitive nature to account for reduced ability to concentrate and focus secondary to memory issues and pain; restricted to jobs that do not require working around heights or heavy machinery; occasional, but not frequent fine fingering bilaterally." (R. 17.) Based on the vocational expert's testimony, the ALJ identified the job of call-out operator as a representative job that an individual with these RFC limitations could perform. (R. 24.)

On appeal, Plaintiff contends that the ALJ's findings are not supported by substantial evidence because: (1) The ALJ based his finding that Plaintiff could do the call-out operator job on outdated and erroneous vocational evidence; (2) the ALJ failed to resolve a conflict between the vocational expert's testimony and the DOT; and (3) the ALJ failed to properly weigh the medical opinion evidence of Dr. Anil Kapoor. (D.E. 12 at 15-36.) The Court considers the arguments in turn and finds them without merit.

**A. The DOT Remains an Appropriate Source of Occupational Data.**

Plaintiff argues that the DOT is outdated and that the ALJ should have instead relied on more recent job information provided by the Department of Labor's Occupational Information Network ("ONET"). (*Id.* 15-25.) The ONET describes the job of call-out operator as skilled labor,

rendering it incompatible with the ALJ's determination that Plaintiff's RFC limits her to unskilled work. (*Id.* at 21.)[1]

"Though Plaintiff argues the [ONET] has superseded the DOT[], the Code of Federal Regulations specifically lists the DOT as a source of reliable job information." *Hearn v. Comm'r of Soc. Sec.*, Civ. No. 18-10538, 2019 WL 2710790, at *7 n.5 (D.N.J. June 27, 2019) (internal quotation marks omitted) (citing 20 C.F.R. § 404.1566(d)). Other cases in this district have also held that a vocational expert may rely on DOT occupation descriptions. *See, e.g.*, *Sanabria v. Comm'r of Soc. Sec.*, Civ No. 15-8963, 2017 WL 436253 at *4 (D.N.J. Jan. 31, 2019) ("Although Plaintiff may disagree with the relevance of the Dictionary of Occupation Titles [] in the modern-day work force, the DOT remains an appropriate source of occupational data." (internal quotation marks and citations omitted)); *Jimenez v. Colvin*, Civ. No. 15-3762, 2016 WL 2742864, at *9 (May 11, 2016). Thus, the ALJ's reliance on the DOT description of call-out operator is not an appropriate basis for reversal or remand.[2]

## B. There is No Conflict Between the DOT and the Vocational Expert's Testimony.

Plaintiff argues that there is an unresolved conflict between the ALJ's determination that Plaintiff can perform "simple, repetitive work" and the DOT's classification of the call-out operator job as requiring level 3 reasoning, which involves introduction of several variables. (D.E. 12 at 25-27.) When analyzing "whether an inherent conflict exists between a job requiring level

---

[1] Specifically, Plaintiff refers to the ONET listing for "credit checker," which corresponds to the DOT listing for call-out operator. (D.E. 12 at 18.)

[2] Similarly, the vocational expert ("VE") did not err in relying on the DOT instead of the ONET. "[C]ourts in the Third Circuit . . . have continued to find the DOT to be an appropriate source of occupational information and have declined to require ALJs and VEs to consult other sources in addition to the DOT." *Rush v. Berryhill*, Civ. No. 17-939, 2018 WL 4257930, at *1 n.1 (W.D. Pa. Sept. 6, 2018) (collecting cases); *see also Junod v. Berryhill*, Civ. No. 17-1498, 2018 WL 5792214, at *4 (W.D. Pa. Nov. 5, 2018) ("[E]ven if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database." (internal punctuation and citation omitted)).

3 reasoning and finding that a claimant should be limited to simple, routine tasks and unskilled work," the Third Circuit provides the following factors to be considered: "1) whether plaintiff actually argued that he was incapable of performing the jobs recommended by the vocational expert, 2) whether inconsistencies between the vocational expert's testimony and the DOT were identified at the hearing, and 3) whether or not the occupations listed by the vocational expert were intended to be exhaustive or were merely illustrative." *Upshur v. Colvin*, 200 F. Supp. 3d 503, 512 (E.D.P.A. 2016) (citing *Zirnsak v. Colvin*, 777 F.3d 607, 617-19 (3d. Cir. 2014)).

Here, Plaintiff argues that she is incapable of performing the job recommended by the vocational expert, (R. 63), but the argument is not supported by the record. Plaintiff attended high school and some college and obtained a certification in computers and networking. (R. 183, 463). She has past relevant semi-skilled work with an SVP and reasoning level of 4. (R. 23). She also completed cosmetology school and passed the licensing exam after her alleged disability onset. (R. 35, 185.) Although Plaintiff did not complete barbershop training, she testified that this was because of a physical inability to stand for long durations, not because of any other mental or physical limitations. (R. 36-37.)

Plaintiff also identified these purported inconsistencies between the vocational expert's testimony and the DOT at the hearing, but these inconsistencies were resolved. (R. 63.) The vocational expert explained there was no conflict because "reasoning level 3 by determination is acceptable for unskilled employment, SVP 2 and that's the designation, unskilled work that can be learned in 30 days. . . . Unskilled work may be detailed, but it doesn't have to be complex." (*Id.*) After consideration, the ALJ "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." (R. 24.)

Finally, the call-out operator occupation provided by the vocational expert was not intended to be an exhaustive list; rather it was explicitly designated as a "representative occupation." (*Id.*)[3] Thus, in view of the *Zirnsak* factors, this Court finds that there was no conflict between the vocational expert's testimony and the DOT, and the ALJ was justified in relying on the vocational expert's testimony.

### C. Substantial Evidence Supports the ALJ's Decision.

Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence of Dr. Kapoor. However, "the Third Circuit has consistently found that 'the opinion of a treating physician does not bind the ALJ on the issues of functional capacity.'" *Ciccone v. Comm'r of Soc Sec.*, Civ. No. 14-2005, 2015 WL 727927, at *6 (D.N.J. Feb. 18, 2015) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)); *see also Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012). "An ALJ can reject a treating physician's opinion . . . where the opinion is . . . inconsistent with other substantial evidence of record." *Ramos v. Colvin*, Civ. No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (citation and internal quotation marks omitted).

Dr. Kapoor's December 2015 assessment of Plaintiff's ability to work conflicted with Plaintiff's medical records and with the vocational expert's and state agency physicians' assessments of Plaintiff's ability to work, which is all substantial evidence of record. While Dr. Kapoor opined that Plaintiff could only lift/carry up to two pounds, stand less than two hours in

---

[3] The vocational expert was not able to identify additional jobs that a person with Plaintiff's RFC could perform. (R. 62-63.) However, even if this Court were to ignore the ALJ's designation of the call-out operator job as "representative," there would still be no actual conflict between the DOT and the vocational expert's testimony for the reasons discussed with respect to the first two *Zirnsak* factors.

15

an eight-hour workday, and sit less than six hours per day, both the vocational expert and the state agency physicians reviewed the record and concluded that Plaintiff could perform a reduced range of light work. (R. 75-76, 86-88, 374.) Further, Plaintiff's medical records from multiple occasions between June 2015 and November 2015 indicate that her condition improved in the months after she began treatment with Dr. Kapoor — her physical exams were characterized as "benign" or "unremarkable," and Plaintiff stated that she "fe[lt] well," denying all symptoms including musculoskeletal pain. (R. 354, 357, 360, 364, 366, 380-81.) The record additionally indicates that Plaintiff consistently exhibited a normal gait and normal muscle strength and did not have acute distress. (R. 420, 467, 471, 487, 550, 1000, 1005, 1024, 1035.) This evidence weighs against Dr. Kapoor's opinion as to Plaintiff's condition. Because Dr. Kapoor's opinion is inconsistent with other substantial evidence of record, it would have been proper for the ALJ to "discredit" it. *Ramos*, 2016 WL 1270759, at *5. Here, the ALJ did not go so far as to reject Dr. Kapoor's opinion; rather, the ALJ gave the opinion little weight, affording greater limitations in Plaintiff's RFC than both the vocational expert and the state agency physicians had testified to, by requiring the representative job to be limited to exclude fine fingering. (R. 15-17, 20, 22, and 60-62.)

The ALJ was justified not only in assigning less weight to Dr. Kapoor's testimony but also in assigning greater weight to the state agency physicians' and vocational expert's findings. *See Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration . . . . 'Because [s]tate agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .'" (quoting SSR 96-6p)). In affirming the ALJ's decision in *Chandler*, the Third Circuit noted that, as is the

case here, the ALJ "did not merely rubber stamp" the state agency physicians' opinions but also added limitations that the state agency physicians did not deem necessary. *Id.* at 361-62.

Here, the ALJ's findings are supported by the substantial credible evidence. The record indicates, as described above, that although Plaintiff suffers from severe impairments, her impairments are not so severe as to prevent her from performing all work. Medical records indicate that Plaintiff generally had a normal gait, did not exhibit acute distress, and had generally normal mental status examinations, with intact memory and attention. (R. 354, 357, 360, 364, 366, 381, 420, 467, 471, 487, 550, 1000, 1005, 1024, 1035.) Given that the ALJ was justified in weighing more heavily the state agency physician's opinions and the medical evidence of Plaintiff's physical exams, these facts support the ALJ's conclusion as to Plaintiff's RFC.

Thus, though there may be evidence that supports Dr. Kapoor's opinion, there is also substantial evidence of record that supports the state agency physician's contrary opinions as well as the vocational expert's reliance on those opinions. "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted).

### **CONCLUSION**

For the reasons stated above, the ALJ's decision is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties